# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CARL EDWARD HOFFMAN, an individual, and REBECCA ELISE HOFFMAN, an individual,<br><br>        Plaintiffs,<br> v.<br>IMPACT CONFECTIONS, INC., a Colorado corporation; and DOES 1 through 100, inclusive,<br><br>        Defendants. | CASE NO. 08cv1597 BTM(NLS)<br><br>**ORDER RE: CLAIM CONSTRUCTION** |
| IMPACT CONFECTIONS, INC., a Colorado corporation,<br><br>        Counter-Claimant,<br> v.<br>CARL EDWARD HOFFMAN, an individual, and REBECCA ELISE HOFFMAN, an individual,<br><br>        Counter-Defendants. | |

  Plaintiffs Carl Edward Hoffman ("Hoffman") and Rebecca Elise Hoffman (collectively "Plaintiffs") have sued Defendant Impact Confections, Inc., for infringement of their design patent, US D556,052 ("Design Patent '052" or "Patent"). On January 4, 2010, the Court held a claim construction hearing. The Court's rulings regarding the claim construction are set forth below.

///

# I. THE DESIGN PATENT

Design Patent '052 covers the "ornamental design for a container." (Def.'s Evidence in Support of Claim Construction, Ex. A.) The design generally consists of a lidded container with a design on the lid that depicts a wheel. The Patent includes 4 figures which show (1) a top view of the container; (2) another top view of the container; (3) a side view of the container with the lid closed; and (4) another side view of the container with the lid closed.

# II. GOVERNING LAW

When construing design patents, trial courts are not required to attempt to provide a detailed verbal description of the claimed design as design patents "typically are claimed as shown in drawing." Id. at 679 (quoting Arminak & Assocs., Inc. v. Saint-Gobain Calmar, Inc., 501 F.3d 1314, 1319 (Fed. Cir. 2007)). A district court's decision regarding the level of detail to be used in describing the claimed design is a matter within the court's discretion. Id. at 679. "While it may be unwise to attempt a full description of the claimed design, a court may find it helpful to point out, either for a jury or in the case of a bench trial by way of describing the court's own analysis, various features of the claimed design as they relate to the accused design and the prior art." Id. at 680.

# III. ANALYSIS

## A. Broken Lines

Defendant argues that the horizontal lines on Figures1 and 2 are "broken lines" that exclude the designated areas from the design. According to Defendant, due to the use of the "broken lines," Plaintiffs' patent is limited to the central horizontal section of the Figures as shown on Page 10 of Defendant's brief. The Court is not persuaded by this argument.

37 C.F.R. § 1.152 explains, "The use of broken lines indicates that the environmental structure or the portion of the article depicted in broken lines forms no part of the design, and is not to indicate the relative importance of parts of a design." The Manual of Patent Examining Procedure ("Manual") also discusses the use of broken lines to indicate that the

1  environmental structure or the portion of the article depicted in broken lines forms no part of
2  the design.  (Def.'s Response Brief, Ex. A at 6.)
3       However, it is apparent to the Court that the horizontal lines are not "broken lines"
4  used to identify portions of the article that are not part of the design, but, rather, are "surface
5  shading."  The Manual explains that surface shading may be necessary "to show clearly the
6  character and contour of all surfaces of any 3-dimensional aspects of the design" or "to
7  distinguish between any open and solid areas of the article." (Def.'s Response Brief, Ex. A
8  at 5.)  As confirmed by Plaintiffs at the hearing, the horizontal lines show that the surface
9  of the container is flat, as opposed to graduated in depth.  Without the surface shading, there
10 would be confusion as to whether certain parts of the design are lower or higher than others.
11      The surface shading looks nothing like the "broken lines" that are used in patent
12 drawings to show the context or environment of the claimed device or design.  See, e.g., In
13 re Zahn, 617 F.2d 261, 262 (Cust. & Pat. App. 1980) (drill bit drawn in broken lines to show
14 environment for claimed design of the drill shank); Atlanta Motoring Accessories, Inc., v.
15 Saratoga Tech., Inc., 33 F.3d 1362, 1365 (Fed. Cir. 1994) (automobile hardtop outlined in
16 broken lines to show environment of rack device); Goodyear Tire & Rubber Co., v. Hercules
17 Tire & Rubber Co., 162 F.3d 1113, 1114 (Fed. Cir. 1998) (broken lines used to show tire
18 sidewall, which formed no part of the design claimed); Door-Master Corp. v. Yorktowne, Inc.,
19 256 F.3d 1308, 1310-11 (Fed. Cir. 2001) (broken lines used to show a door pull which
20 formed no part of the claimed design for an integrated door and frame).  The lines used in
21 Plaintiffs' drawings are more like the surface shading used on the cabinet doors in Door-
22 Master, 256 F.3d at 1311, to show that the surfaces are solid and flat.
23      That the horizontal lines in Plaintiffs' drawings are "surface shading" is supported by
24 prior art submitted by Defendant.  This prior includes drawings of containers that use similar
25 surface shading to indicate a flat solid surface.  (Def.'s Evidence in Support of Claim
26 Construction, Ex. F at 2-6, 8, 14-15, 17-20, 62-65.)  The surface shading on the ornamental
27 design for a cooler, US D448,250 S (Ex. F at 2), closely resembles the horizontal lines in
28 Plaintiffs' drawings.

1       The horizontal lines are not "broken lines" as suggested by Defendant.[1] The
2 horizontal lines are surface shading and do not exclude any portion of the Figures from the
3 claimed design.

### B. Prosecution History

Defendant also argues that the prosecution history shows that the curved rectangular design at the bottom of Figure 1, which consists of a long curved rectangle next to six thin slanting rectangles resembling slash marks, is not part of the design. Originally, Hoffman's design patent application consisted of five Figures. The original Figure 1 is the same as Figure 1 of the Patent except that the word "NASCAR" was written in the long curved rectangle. The original Figure 2 is the same as Figure 2 of the Patent. Figure 5 was another drawing of a top view of the container but included significant design differences.

The Patent Examiner rejected Hoffman's application in part because Hoffman was not an owner of the NASCAR copyright. (Def.'s Evidence in Support of Claim Construction, Ex. D at 25-26.) The Patent Examiner also explained that the claim was indefinite as Hoffman had claimed three different top plan views: "It is unclear if applicant is attempting to claim three different embodiments, or if these views are mislabeled. If these are three different embodiments, applicant is advised that a restriction requirement will be forthcoming regarding Figure 5." (Id. at 24.)

In response, Hoffman canceled Figure 5 and clarified that Figure 2 is a *second embodiment* of top view Figure 1. (Def.'s Evidence in Support of Claim Construction, Ex. D at 40.) Hoffman also "corrected" Figures 1 and 3 to "no longer include any NASCAR mark." (Id. at 49.) Hoffman's application was then approved.

Defendant argues that the curved rectangular design is part of the NASCAR logo and cannot be part of the design patent for the reasons set forth by the Patent Examiner. Plaintiffs counter that the NASCAR logo trademark consists of "design plus words, letter, and/or numbers." According to Plaintiffs, without the word "NASCAR," the rectangular design

---

[1] At the hearing, Mrs. Hoffman stated that the horizontal lines were "broken lines." However, Mr. and Mrs. Hoffman are not attorneys and the Court understands that they may not use terms of art precisely.

1  is not the "NASCAR" logo.

2      Although it is unclear whether NASCAR could bring an infringement claim based on
3  Plaintiffs' use of the design alone, the fact is that the Patent was approved even though
4  Hoffman left in the rectangular design.[2]  Hoffman did not draw the rectangular design in
5  broken lines and made it clear that other than removing the "NASCAR" mark, no other
6  changes had been made to Figure 1.  Therefore, the prosecution history does not preclude
7  the rectangular design from Plaintiffs' Patent.

8      Defendant also argues that the "20," rectangular design, and "Tony Stewart" must not
9  be part of the design because these design features are not present in Figure 2.  However,
10 Hoffman made it clear that Figure 1 and Figure 2 are different embodiments of the top view.

11     Whether Plaintiffs' use of the NASCAR rectangular design or use of the number "20"
12 and the name "Tony Stewart" without a license affects the validity of Plaintiffs' Patent is not
13 an issue before the Court at this time.

14

15 C.  <u>Specificity of "Pit Crew Chew," "20," and "Tony Stewart"</u>

16     The design patent as embodied in Figure 1 includes the "Pit Crew Chew" lettering, the
17 number "20," "Tony Stewart," and the rectangular design.  Plaintiffs argue that the brand
18 name "Pit Crew," the racing car number "20," and race car driver "Tony Stewart" are
19 representative only and that the design patent extends to a "Brand Name" of the product, a
20 "Race Car Number," and a "Race Car Driver."  The Court disagrees.

21     The Patent consists of the four drawings without any specifications.  Without
22 specifications explaining that the depicted brand, number, and driver are just for
23 representational purposes, there does not seem to be a basis for expanding the scope of the
24 Patent as suggested by Plaintiff.  Plaintiffs could have outlined "Pit Crew Chew," "20," and
25 "Tony Stewart" with broken lines and provided an explanation that the brand name, specific
26 race car number, and race car driver could be modified.  See, e.g., <u>In re Dial-A-Mattress</u>

27 ───────────────

28     [2] The Court notes that absent the lettering inside the long rectangular design, it is unclear whether the slash marks are intended to precede or follow the long rectangular design – i.e., whether the design is upside-down or right-side-up looking straight at the drawing.

1  Operating Corp., 240 F.3d 1341, 1343 (Fed. Cir. 2001) (trademark registration for "(212) M-
2  A-T-T-R-E-S" depicted "(212)" portion of the mark in broken lines to indicate that "the area
3  code will change").  However, Plaintiffs did not do so.

## IV. CONCLUSION

Plaintiffs' Design Patent '052 is as shown in Figures 1-4.  The horizontal lines do not exclude any portion of the drawings from the design.  As embodied in Figure 1, the design includes the "Pit Crew Chew" lettering, the number "20," "Tony Stewart," and the rectangular design.  Other pertinent features of the design include the various ornamental details – e.g., the concentric circles representing the rim, the design on the "hub," and other embellishments on the "tire" portion of the wheel.  The Court does not find it necessary to provide a detailed verbal description of the design.

**IT IS SO ORDERED.**

DATED:  January 6, 2010

_____
Honorable Barry Ted Moskowitz
United States District Judge